IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| NATHAN REYES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:08-CV-0170 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner has filed with this Court a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the undersigned Magistrate Judge is of the opinion petitioner is not entitled to relief and recommends the motion to vacate, set aside or correct sentence be DENIED.

I.
PROCEDURAL HISTORY

On December 17, 2004, petitioner was charged by complaint in the Northern District of Texas, Amarillo Division, with the offense of bank robbery, a violation of 18 U.S.C. § 2113(a). On January 10, 2005, petitioner was arrested in the Lubbock Division. *United States v. Reyes*, Cause No. 2:05-CR-0004. On January 12, 2005, petitioner was charged by indictment with the same offense of bank robbery. Specifically it was alleged that on or about December 15, 2004, petitioner:

> [B]y force, violence, and intimidation, did take from the person or presence of another, United States currency belonging to and in the care, custody, control, management, and possession of the Happy State Bank of Amarillo, a bank whose

deposits were then insured by the Federal Deposit Insurance Corporation.

On March 3, 2005, after a two-day trial, a jury convicted petitioner of the offense as charged in the indictment. On May 25, 2005, the District Judge sentenced petitioner to a term of 225 months imprisonment with a three-year supervised release term, a special assessment of $100.00, and restitution in the amount of $8,770.

Petitioner timely appealed his conviction and sentence. On October 12, 2005, petitioner's appellate counsel, who also served as petitioner's trial counsel, filed an *Anders* brief asserting two grounds of error: (1) whether the evidence at trial was legally sufficient to sustain the offense of conviction, and (2) whether the trial court abused its discretion in imposing an unreasonable sentence. By her brief, counsel certified the appeal presented only frivolous appellate issues. On April 30, 2007, counsel filed an amended brief on petitioner's behalf.

On June 11, 2007, petitioner filed a pro se appellate brief asserting two grounds of error:

1. The introduction of lay opinion testimony on the identity of a person depicted in a photograph at trial was plain error; and

2. Petitioner received ineffective assistance of counsel when defense counsel failed to move for a judgment of acquittal at trial.

On August 30, 2007, the Fifth Circuit dismissed petitioner's appeal as frivolous stating, "Our independent review of the record, counsel's brief, and Reyes's response discloses no nonfrivolous issue for appeal." Petitioner did not seek a petition of certiorari in the United States Supreme Court.

On September 5, 2008, petitioner filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On December 9, 2008, the government filed a response in opposition to petitioner's motion.

## II.
## STATEMENT OF FACTS

The following summary of the evidence at trial is taken from the Amended Brief filed by appellate counsel on appeal:

There was really no dispute that a robbery of the Happy State Bank, located at 5050 South Western Street, Amarillo, Texas, occurred at approximately 10:15 a.m. on December 15, 2004. (R2:76, 80-81.) Evidence was presented through the testimony of Greg Houlette, Senior Vice President at Happy State Bank, that on that date, deposits of the bank were insured by the Federal Deposit Insurance Corporation. (R2:57.)

One of the bank tellers present at the time, Christine Herrera ("Herrera"), testified that the robber was between 5'8" and 5'10" tall; weighed approximately 160 to 170 pounds; and was wearing a black mask, black sunglasses, black coat, and black gloves. (R2:82-83.) Photographs taken from the bank's video surveillance cameras showed the robber was wearing khaki pants and white shoes. (R2:89.) Herrera testified that the robber, holding a gun, ran into the building yelling, "It's not a f'ing joke, give me all your money." (R2:81.) According to Herrera, the robber yelled at the tellers, several times, to give him all their money, while pointing a gun directly at Herrera and another teller. (R2:81-82.)

A second teller present during the robbery, Rachel O'Donoghue, ("O'Donoghue") described the robber during her testimony as approximately 5'5" - 5"6" tall, of medium build and in his mid-twenties. (R2:100.) O'Donoghue testified that the robber yelled, "This is not a f***ing joke, this is a robbery," while pointing a gun at her face. (R2:99-100.)

A third teller, Susan Holloway ("Holloway") testified to her recollection that the robber was about 5'4" tall, weighed about 150 pounds, and was about twenty-five years of age. (R2:118.) Holloway testified that the robber carried a gun which he pointed at the tellers and stated: "This isn't a joke; Don't push any alarms; I don't want any dye packs, and I want both drawers; I want everybody's money." (R2:117-19).

Subsequent testimony at trial established that Reyes is 5'9" tall, weighed 170 pounds, and was 26 years old at the time the robbery was committed. (R2:271.)

Brenda Homer ("Homer"), the branch manager at the bank, testified that on the day of the robbery, she went to the opposite side of the building from where she had been seated, once the robber exited the bank, to try and see where the robber was headed. (R2:134-136.) Homer further testified that although she did not see the robber enter the vehicle, she observed a late 80's, early 90's silvery blue, four-door, boxy car, pull away very quickly from the bank. (R2:136-138.)

Dianne Goddard ("Goddard"), a citizen driving north on Western Street on the morning of the robbery, testified that while driving by the bank, she observed a white male with dark shaggy hair below the ears, walking across the grassy area outside the bank, carrying a backpack, (R2:152, 156); and further observed a car parked in a strange location on the south side of the bank. (R2:153.)

No direct identification of Reyes as the bank robber was made at trial through eyewitness identification; photographs taken from the video surveillance at the bank; fingerprints; or other physical evidence. Indeed, all of the evidence relied upon by the government to obtain the conviction against Reyes was purely circumstantial, consisting primarily, of the following testimony.

Patricia Wingo ("Wingo"), the grandmother of Reyes (R2:162), testified that on the morning of December 15, 2004, Reyes borrowed her vehicle, at approximately 9:45 a.m. (R2:168); that when he came to get the keys he was wearing khaki pants and white sneakers (R2:165); and that her vehicle was returned 30-40 minutes later, (R2:168). According to Wingo, Reyes was unemployed at the time and needed her vehicle to attend a job interview. (R2:163, 165.) Reyes had been residing with her since late October (R2:163), but several days before December 15, 2004, had moved out of her apartment and was temporarily residing with AnnaLisa Salas and Laron Johnson, located in an apartment across the hall from Wingo's residence, (R2:164).

According to Wingo, during the noon hour newscast on December 15, 2004, she heard reports of a bank robbery, including descriptions of the robbery occurring at about 10:15 a.m, with the robber dressed in khaki pants and white sneakers, and possibly involving a late model blue car. (R2:169-170.) Wingo subsequently contacted the police with her suspicions that Reyes may have been involved in the robbery. Wingo additionally testified that the last time she saw Reyes was the morning of December 15th, when he borrowed her vehicle. (R2:170.)

Witnesses Homer and Goddard, the only prior witnesses having described seeing any type of "suspicious" vehicle at the scene of the bank robbery, both testified that the appearance of the vehicle they saw on the morning of December 15, 2004, was consistent with the vehicle registered to Wingo, and borrowed by Reyes on the morning of the robbery. (R2:140, 154.)

During the police investigation of Wingo's tip, AnnaLisa Salas ("Salas") and Laron Johnson ("Johnson") were questioned by members of the Amarillo Police Department. (R2:228, 233.) At trial, Salas testified that as of December 15, 2004, Reyes had been staying for several days at the apartment shared by Salas and Johnson. (R2:220.) Salas testified that on the morning of December 15, she heard Reyes leave the apartment sometime before 11:00 a.m. (R2:220-221); and that when he returned to the apartment, he asked her to return the car keys and $5.00 for gasoline to Wingo, which he retrieved from a backpack. (R2:222-223.) Salas testified that when Reyes gave her the money, Salas asked where he had gotten the money, and Reyes replied, "it's better if you don't know." (R2:229.) According to

Salas, she, Reyes and Johnson then left for the mall in a taxi that Reyes provided. (R2:225.) While at the mall, Reyes made several purchases, and the three then returned to the apartment, again by taking a taxi, paid for by Reyes. (R2:226-27.) That was the last time Salas saw Reyes. (R2:228.)

Johnson testified that after Reyes returned to Johnson's apartment on the morning of December 15, 2004, he observed loose money lying on the living room floor. (R2:244, 248.) While at the mall, according to Johnson, Reyes made numerous purchases and paid the taxi cab fare both going to and returning from the mall. (R2:245-46.) After returning to the apartment, Reyes gathered up his belongings and left. (R2:246-47.) That was the last time Johnson saw Reyes. (R2:247.)

Finally, Marc Tunstall testified that while working at the bus station on the evening of December 15, 2004, at about 11:00 p.m., an individual that looked like Reyes purchased a bus ticket for transportation to Dallas, leaving on the scheduled 11:15 p.m. bus, with a $100 bill, that this individual was very nervous and because the bus was late, repeatedly asked what the time the bus would be arriving. (R2:202-204.)

## III.
## PETITIONER'S ALLEGATIONS

In his motion to vacate, petitioner appears to present the following claims:

1. Petitioner was denied effective assistance of counsel because counsel:

    a. failed to object to the testimony of witnesses concerning the identity of a person depicted in a surveillance photograph;

    b. improperly elicited testimony that petitioner was a drug dealer;

    c. failed to object to a hearsay statement made by petitioner;

    d. failed to object to a tainted identification; and

    e. failed to move for a judgment of acquittal after the presentation of the Government's case.

2. The cumulative errors of counsel violated petitioner's right to due process and a fair trial.

## IV.
## EFFECTIVENESS OF COUNSEL

The proper standard for judging a petitioner's contention that he is entitled to relief on the

ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a petitioner must show defense counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. In order to amount to ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Counsel's performance is reviewed from counsel's perspective at the time of trial, not from hindsight. *Id.* at 689. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*

A petitioner must also show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. Specifically, petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different or that the errors were so serious as to deprive the [petitioner] of a fair trial with a reliable result." *Id.* at 694.

A. <u>Testimony as to Surveillance Photographs</u>

At trial, petitioner's grandmother, Patricia Wingo, testified that the masked robber in the surveillance photographs taken at the bank was petitioner. Tr. 170-72. Ms. Wingo based this opinion on the gloves the robber was wearing being similar to gloves she had owned, the robber's sunglasses, back pack and black jacket being similar to items owned by petitioner, the khaki pants and white shoes being similar to the ones petitioner was wearing when he borrowed Ms. Wingo's car, and based on the robber's stance and/or moves. Petitioner's friends and former roommates, Laron Johnson and AnnaLisa Salas, testified only that the robber in the surveillance photos could

have been petitioner. Tr. 230, 247.

In his first ground, petitioner argues counsel was ineffective for failing to object to this identification testimony from the witnesses. Petitioner maintains the admission of Wingo, Salas, and Johnson's "lay opinion testimony" as to the identity of the person in the bank's photographs was error, and counsel's failure to object substantially prejudiced petitioner because the surveillance photos were the only evidence to place petitioner inside the bank. Petitioner concludes the error was substantially increased when the Government relied on this inadmissible testimony in its closing argument.

Petitioner presents no fact-specific argument in support of his current contention that the opinion identification testimony by petitioner's grandmother and petitioner's former roommates was not admissible, nor has petitioner argued the basis, factual or otherwise, upon which he contends counsel should have objected to the opinion identification testimony.[1] Instead, petitioner merely refers to an Eighth Circuit case[2] for the proposition that a witness's opinion concerning the identify of a person depicted in a surveillance photograph is admissible "if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."[3] In that Eighth Circuit case, however, the defendant challenged identifications, made by defendant's *parole officers*, of the defendant partially masked in a surveillance photograph on the basis that the use of these witnesses "made it strategically undesirable for the defense to attack their credibility fully or explore reasons for bias on cross-examination" because to do so

---

[1] Conclusory allegations are insufficient to prove a claim of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

[2] *United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984).

[3] Petitioner notes one way this criteria may be met is "where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial."

would have revealed the defendant's criminal history and status as a parolee to the jury. The challenge to the admission of the opinion identification testimony was based on the inability to properly cross-examine the witnesses, <u>not</u> on the inadmissibility of the identification testimony itself.[4] This nonbinding precedent does not support petitioner's claim. In fact, the Eighth Circuit case tends to show the identification testimony of the witnesses in petitioner's case was admissible even under Eighth Circuit precedent. On the day of the robbery, petitioner wore a black mask over his face, a jacket and gloves, making it difficult to identify him from the bank photographs. Wingo, Salas and Johnson were familiar with petitioner's appearance and the way he carried himself. Such opinion identification testimony by these witnesses was admissible under the Federal Rules of Evidence.

Lastly, in his *pro se* brief on appeal, petitioner argued the testimony of Wingo and Johnson was inadmissible because it did not meet the requirements of Rule 701 of the Federal Rules of Evidence, was not based on first hand knowledge of the event to which they were testifying, and because, rather than being helpful to the jury, it usurped the jury's function. The Fifth Circuit considered these claims and determined petitioner's claims were frivolous. Petitioner has not demonstrated the testimony was not admissible, that petitioner's counsel was deficient for failing to object to the testimony, that any objection to it would have been sustained, or that petitioner was prejudiced by any failure to object. Petitioner's first ground should be DENIED.

## B. Eliciting Testimony that Petitioner was Selling Marijuana

During trial, defense counsel elicited testimony from petitioner's grandmother, Ms. Wingo, that she believed petitioner was selling marijuana while he was living with her and after he had

---

[4] The *Farnsworth* court held the admission of the parole officers' identifications was not an abuse of discretion.

moved in with Salas and Johnson across the hall.[5] Tr. 177-78. In his motion to vacate, petitioner acknowledges counsel apparently elicited such testimony in an attempt to explain petitioner's possession of a large sum of money.[6] Petitioner contends, however, that counsel was ineffective for eliciting such testimony because the strategy was "highly unusual," the decision to elicit such testimony was unreasonable, and that this act prejudiced petitioner "in the eyes of the jury."

Ordinarily, the Court should not second guess tactical decisions of trial counsel. *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A conscious and informed strategy cannot be the basis for an ineffective assistance of counsel claim "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 753 (5th Cir. 2003). The evidence elicited during trial placed counsel in the undesirable position of explaining, if possible, why petitioner, who was unemployed, suddenly had a large sum of money. The strategy to show petitioner had a source of income other than from the bank robbery was valid. The undersigned cannot say counsel's strategic decision to show petitioner had alternative income, albeit from the sale of marijuana, was so ill chosen as to permeate the entire trial with obvious unfairness. Petitioner's second ground should be denied.

## C. Petitioner's Hearsay Statement

Petitioner contends the Government presented, at trial, a hearsay statement allegedly made by petitioner "in reference to some money." Petitioner argues counsel was ineffective for failing to object to such hearsay, and that counsel's failure to object allowed the jury to consider inadmissible

---

[5] Counsel also elicited testimony from Wingo that petitioner played in poker tournaments every Sunday, Tr. 178, and from Johnson that petitioner had, at some point in the past, had money wired to him. Tr. 253.

[6] Johnson subsequently described petitioner having a pile of money, 3-4 feet in diameter, on the floor after he returned to Johnson's apartment on the day of the robbery. Johnson estimated the amount of money to be a "couple of hundred, a couple of thousand." Tr. 245, 248.

evidence in determining petitioner's guilt.

Although petitioner cites page 329 of the record to identify the hearsay evidence he references, the trial transcript ends at page 314. The undersigned cannot determine the basis of petitioner's claim. Again, this claim is conclusory and insufficient to prove a claim of ineffective assistance of counsel. Moreover, to the extent, if any, petitioner is arguing an unidentified statement against interest he allegedly made is inadmissible hearsay, such most likely would not be hearsay but, instead, would be an admission by party-opponent. *See* Fed. R. Evid. 801(d)(2). Petitioner has not demonstrated defense counsel was deficient for failing to object to the admission of some statement by petitioner, that an objection, if made, would have been sustained and that petitioner was prejudiced by the failure to object. Petitioner's third ground should be denied.

### D. Tainted Identification

At trial, the Government called Marc Tunstall, an employee at the bus station. Tunstall testified an individual who looked like Reyes purchased a bus ticket to Dallas with a $100 bill on the evening of December 15, 2005, at about 11:00 p.m. Tunstall testified this individual was very nervous and, when the bus was late, repeatedly asked what time the bus would be arriving. Tunstall did not identify petitioner as the individual at the bus station on December 15, 2005.

In his fourth ground, petitioner argues the police utilized a "highly suggestive" procedure in an attempt to have Tunstall identify the individual at the bus station as petitioner. Specifically, petitioner contends the police only showed Tunstall one photograph of petitioner rather than a group or array of photos which included a photo of petitioner for purposes of identifying petitioner. Petitioner concludes Tunstall's identification of petitioner was tainted and that defense counsel was ineffective for failing to object to the identification.

On cross-examination by defense counsel, Tunstall admitted he could not state, under oath,

HAB55\R&R\REYES-170.INEFFASSIST:2
2:05-CR-0004                                               10

that petitioner was the individual who purchased the bus ticket on the evening of December 15, 2004. At most, Tunstall's testimony was that someone with petitioner's general appearance purchased a ticket on that date and acted nervously when the bus was late. Tunstall did not positively identify petitioner as the individual. Counsel had no basis upon which to make a valid objection to Tunstall's testimony and the failure to do so was not deficient.[7] Instead, counsel emphasized the fact to the jury that the witness could not positively identify petitioner. Moreover, petitioner cannot demonstrate he was prejudiced by counsel's failure to object because he cannot show that any objection would have been sustained, or that without Tunstall's testimony the result of petitioner's trial would have been different. Petitioner's claim of ineffective assistance of counsel is without merit and should be denied..

### E. Move for Acquittal

Petitioner argues counsel was ineffective for failing to move for a judgment of acquittal after the presentation of all of the evidence against him. Petitioner maintains the evidence at trial established only that petitioner: (1) was in possession of money; (2) borrowed a car similar to one seen at the robbed bank's parking lot; and (3) owned a backpack. Petitioner contends he was prejudiced by counsel's failure to move for acquittal because such placed a stricter standard of review upon petitioner regarding his sufficiency of the evidence claim.

As set forth in the Statement of Facts above (and more fully in the Government's *Response in Opposition to Motion Under 28 U.S.C. 2255*), there was additional evidence presented at trial, albeit largely circumstantial evidence. The evidence, viewed in the light most favorable to the prosecution, showed the description of the robber was consistent with petitioner's description; the

---

[7]"Failure to assert a meritless objection cannot be grounds for a finding of deficient performance." *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

clothing petitioner was wearing when he borrowed his grandmother's car was consistent with clothing worn by the bank robber; the time of the robbery was consistent with the time petitioner borrowed his grandmother's car; petitioner's grandmother's car was consistent with the appearance of a vehicle seen at the bank at the time of the robbery; petitioner's unexplained possession, and binge spending, of a sum of cash immediately after the robbery was consistent with petitioner having come into a large sum of money; petitioner's statement to one of his former roommates that it was better that she not know where petitioner had obtained the money was consistent with petitioner having obtained the money from an illegal source or act; petitioner's quickly leaving Amarillo on the date of the robbery without telling others he was leaving was consistent with flight from having committed the offense; and the identification of petitioner in the surveillance photos by his own grandmother – the existence of all of these factors, and all reasonable inferences drawn therefrom, would have precluded the trial court from granting a motion for acquittal and removing the decision-making from the jury. Furthermore, the trial court was aware of the impact of the witnesses on the jury and was able to observe the demeanor of the witnesses themselves. Petitioner has not attempted to argue the witnesses' testimony and demeanor had an insignificant impact on the jury or that the evidence detailed above was not sufficient to proceed to a verdict. A motion for a judgment of acquittal is a challenge to the sufficiency of the evidence. *United States v. Moreno*, 185 F.3d 465, 470 (5th Cir.1999). The evidence presented at trial provided a sufficient basis for a reasonable and rational jury to find petitioner guilty of bank robbery as charged. Consequently, petitioner has not demonstrated counsel was deficient for failing to move for an acquittal, nor has he shown a motion for acquittal would have been granted by the trial court. Petitioner was not

prejudiced by any failure of counsel to move for an acquittal.[8] This ground should be denied.

## V.
## CUMULATIVE ERROR

As discussed above, the undersigned does not find defense counsel committed the errors alleged by petitioner. Consequently, there were no cumulative errors which infected petitioner's trial to the extent that petitioner was denied his right to a fair trial or that his conviction violated due process. Petitioner's last ground should be denied.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by petitioner NATHAN REYES be, in all things, DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE and NOTICE OF RIGHT TO OBJECT

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 5th day of November, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[8] Petitioner did not assert a claim of insufficient evidence in his pro se brief on appeal and was not subjected to a stricter standard of review for such a claim.

# * <u>**NOTICE OF RIGHT TO OBJECT**</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).